# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANG SHOUA XIONG,<br><br>            Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>            Defendant.<br>_____/ | CASE NO. 1:09-cv-00398-SMS<br><br>ORDER AFFIRMING AGENCY'S<br>DENIAL OF BENEFITS |

Plaintiff Pang Shoua Xiong, proceeding *in forma pauperis*, by her attorney, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following a review of the complete record and applicable law, this Court concludes that the ALJ properly found Plaintiff ineligible for benefits.

I. **Administrative Record**

   A. **Procedural History**

On February 24, 2005, Plaintiff applied for supplemental security income ("SSI"). AR 10. Her claims were initially denied on May 16, 2006, and upon reconsideration, on March 23, 2007.

---

[1] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 8 & 9).

1

AR 10. On April 19, 2007, Plaintiff filed a timely request for a hearing. Plaintiff appeared and testified at a hearing on June 19, 2008. AR 228-256. On October 15, 2008, Administrative Law Judge Michael J. Haubner denied Plaintiff's application. AR 7-18. The Appeals Council denied review on December 24, 2008. AR 2-4. On February 24, 2009, Plaintiff filed a complaint seeking this Court's review (Doc. 1).

### B. Factual Record

Plaintiff, born June 15, 1955, is four feet, two inches tall and weighs 80 pounds. AR 111, 116. She cannot read or write English, and has never been employed outside her home. AR 71, 116, 218. Plaintiff's health problems began after she experienced problems in the delivery of her last child on October 14, 1992. AR 105, 117, 124, 219. Plaintiff came to the United States from Thailand as a refugee in September 2005. AR 65, 219

In an adult function report dated February 18, 2007, Plaintiff described herself as sick and unable to do much daily activity. AR 87. She sometimes washed a few dishes or did light sweeping, but generally did no household chores. AR 87, 89. She no longer gardened. AR 88. She was depressed and unable to concentrate. AR 87-90. Plaintiff performed her own personal care, such as dressing, bathing, hair care, feeding, and toileting herself. AR 88-89. Her adult children assisted her with cooking, shopping, and personal care. AR 88-90. Plaintiff had never taken care of money. AR 91. She did not drive or go places since she could not follow directions. AR 90-92. Plaintiff described herself as easily angered and unable to get along with authority figures, to handle stress, or to handle changes in routine. AR 92-93.

Adult functioning reports prepared by Plaintiff's husband, Cher Doua Yang, on February 18, 2007, and March 26, 2006 are substantially the same as Plaintiff's own reports. AR 95-110.

Dr. Shireen Damania, certified as a psychiatrist and neurologist, examined Plaintiff on behalf of the agency on April 28, 2006. AR 218-221. Dr. Damania described Plaintiff's complaints as anemia, insomnia, poor appetite, fatigue, and depression. AR 219. "The depression she experiences is due to her situation," Damania explained. Plaintiff appeared mildly depressed, but smiled during the interview and demonstrated broad affect appropriate to the conversation. AR 220. She was oriented in time, place, and person. AR 220. She appeared of

average intelligence and demonstrated normal memory and attention span. AR 220. Damania opined that Plaintiff could handle her finances in her own best interest with the help of family members. AR 220.

On April 28, 2006, Dr. Rustom Damania, performed a physical examination of Plaintiff for the agency. AR 224. He concluded:

> The patient is a 50-year-old female with positive hepatitis B, nonimmune. There are no hepatocellular decompensation signs except for subjective fatigue. She should be able to do light duties such as lifting 20 pounds occasionally and 10 pounds frequently. She should be able to sit, stand, and walk six hours. She does not require an assistive device for ambulation. No postural limitations unless bending, stooping and crouching is done on a very frequent basis. No definite manipulative limitations unless she must reach, handle, feel, grasp or finger on a repetitive, constant basis. No relevant visual impairments. Her communicative impairments would be language problems.

AR 227.

Plaintiff was cooperative and pleasant. AR 220. She demonstrated adequate interpersonal and social skills, and could respond appropriately to co-workers, supervisors, and the public. AR 220-21. She could understand, carry out, and remember simple one- and two-step job directions in an unskilled job. AR 220. As such, she could function in a job setting so long as instructions were presented simply. AR 221.

Dr. Ian Ocrant medically evaluated Plaintiff on May 9, 2006. AR 185-86. He found that Plaintiff's impairments included major depression, weakness, insomnia, poor memory, and an inability to eat. AR 185. Dr. Ocrant opined that medical evidence did not support the level of limitations in functioning that Plaintiff reported. AR 186. He concluded:

> [Claimant's] anemia and insomnia appear to be well-controlled. [Claimant] has hep[atitis] with fatigue, but there is no evidence of any complications. [Claimant] is also [underweight], however, not so severely as to meet 5.08. Suggest light RFC. No postural limits appear necessary as [claimant] only had [slightly decreased range of motion left side]. [Claimant] is allowance at Light.
>
> **Psych**[Claimant complains of] long [history] of depression assoc[iated] [with] her physical condition. [Claimant] also [complains of] poor memory and conc[entration]. However, [mental status examination] at psych[iatric] CE shows no significant deficits in her ability to pay [attention], remember, or conc[entrate]. She only appeared to be mildly depressed, but her affect was broad and appropriate. Suggest non-severe.

AR 186.

3

After examining Plaintiff, Dr. Ocrant added that, although Plaintiff had anemia and chronic active hepatitis B without hepatic decompensation, no associated physical problems were apparent, and Plaintiff had no atrophy or debilitated appearance. AR 186. Her fatigue was only a subjective report. The doctor noted:

> I took [complaints of] fatigue into account [and] discussed case in depth [with] SSA program gastroenterologist Dr. Keith Quint. In Hep B (chronic active), but [without] hepatic decompensation as evidenced by completely [negative] labs, exams (FO & CE), disability level fatigue is highly unlikely. Also, if [claimant] were truly as bad as alleged, [claimant] would have been referred to GI specialist for highly effective, specific treatment note: [treating physician] referred [claimant] to [psychiatrist], not GI. See also [continuation] sheet re: anemia. At most, such [claimant's] fatigue justifies a [medium] RFC.

AR 189.

Thus, Dr. Ocrant revised his opinion and indicated that Plaintiff's appropriate residual functional capacity was medium. AR 186. He determined that Plaintiff was able to lift fifty pounds occasionally, twenty-five pounds frequently, walk about six hours in an eight-hour workday, and sit six hours in an eight-hour workday. AR 188.

Psychiatrist Archimedes Garcia prepared a psychiatric report on May 15, 2006. AR 184. Dr. Garcia determined that Plaintiff's affective disorders were not severe. AR 184.

Dr. Maximo Parayno,[2] who had treated Plaintiff at King's Winery Clinic since April 22, 2006, completed a medical source statement dated May 24, 2008.[3] AR 137; 139-40. After twenty months of treatment, Plaintiff's response was poor. AR 140. Parayno reported that Plaintiff had multiple somatic problems, hepatitis B, tendinitis in her hands, and anorexia. AR 139. He explained that Plaintiff's depression caused her to isolate herself, impairing her ability to relate to supervisors, co-workers, and the public. AR 139. Plaintiff was so preoccupied with her somatic complaints that she was unable to handle the stress and pressure of a full days' work. AR 139. Because Plaintiff had impaired memory and spoke only Hmong, her ability to carry out technical or complex job instructions was impaired. AR 139. Noting that Plaintiff was unable to

---

[2] The record does not disclose Dr. Parayno's medical specialty, if any.

[3] The ALJ complained that Dr. Parayno's handwriting was, at best, five per cent legible, and required Plaintiff to secured a transcribed copy of his initial report. AR 236. Thereafter, Dr. Perayno provided a revised report. *See* AR 136. This Court found Dr. Perayno's reports to be completely legible.

read and write in Hmong, Parayno opined that her ability to remember and carry out even simple one- and two-step instructions was poor. AR 139. Unable to perform simple addition and subtraction, she was incompetent to handle funds, particularly to make change. AR 140. Because Plaintiff was unable to repeat a seven-digit number or perform the forward digit span test, Parayno considered Plaintiff's concentration and attention to be poor. AR 139. Plaintiff's medication caused side effects including dry mouth, nausea, sedation, gastric distress and sexual dysfunction. AR 140. Her current GAF was the same as it had been for the past year: 45-50.[4] AR 140. Supporting medical records appear at AR 141-181; 197-217.

In response to the agency's request that his May report be transcribed, Parayno provided an updated medical source statement dated July 12, 2008. AR 136-138. The updated statement is consistent with the first statement, but less detailed.

Plaintiff testified that she was unable to make the bed, mop floors, or iron. AR 239, 241, 242. She did laundry weekly, emptied trash, cooked simple foods twice a day, cleaned up after herself or did dishes twice a day, cleaned the kitchen and bathroom once a week, vacuumed once a week, and shopped with her family. AR 239-242. Although Plaintiff did not know how to use the bathtub faucet, she was able to perform her own personal care. AR 239. Plaintiff testified that she could lift a half-gallon of milk with difficulty, but could not lift a gallon or two-gallon milk container. AR 245. She could stand for twenty minutes at a time and could sit for about one hour. AR 245. She could concentrate no more than twenty minutes. AR 246.

Hypothetical one assumed an individual able to handle funds; able to interact socially; without difficulties in concentration, persistence, or pace; without evidence of emotional ability or deterioration; able to carry out on- and two-step instructions in an unskilled setting; able to

---

[4] The Global Assessment of Functioning (GAF) scale may be used to report an individual's overall functioning on Axis V of the diagnosis. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., Text Revision 2000) ("DSM IV TR"). It considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," excluding "impairment in functioning due to physical (or environmental) limitations." *Id.* at 34. The first description in the range indicates symptom severity; the second, level of functioning. *Id.* at 32. In the case of discordant symptom and functioning scores, the final GAF rating always reflects the worse of the ratings. *Id.* at 33.
   Plaintiff's GAF, 45-50, is the top half of the range GAF 41-50, which indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job). *Id.* at 34.

respond appropriately to co-workers, supervisors, and the public; and able to respond appropriately in usual work situations and deal with changes in routine. AR 250. Vocational expert Judith Najarian opined that, at the medium level, such a person could do unskilled, SVP-one level jobs, such as hand packer, machine cleaner, fruit cutter, or poultry hanger.[5] AR 250-51.

Hypothetical two assumed the person could lift and carry fifty pounds occasionally, and twenty-five pounds frequently; could stand or walk six hours in an eight hour day, with normal breaks; could sit six hours out of eight; had unlimited ability to push and pull; could occasionally climb; and infrequently balance, stoop, kneel, crouch and crawl. AR 251. Najarian opined that this individual could do all jobs named for hypothetical one as well as box bending. AR 252.

Hypothetical three assumed that the individual could lift and carry twenty pounds occasionally, ten pounds frequently; could sit, stand, and walk six hours out of eight; had no postural limitations, but should avoid frequent bending, stooping and crouching; and had "no manipulative limitations unless she must reach, handle, feel, grasp, or finger something on a repetitive, constant basis." AR 252-53. Najarian opined that, in light of the broad restrictions relating to the claimant's use of her hands, no such job is available.

Finally, hypothetical five[6] assumed that the individual could lift and carry less than ten pounds; stand less than twenty minutes at a time, sit one hour at a time; walk two house lengths at a time; needed to elevate her feet several times a day for a total of one to two hours; concentrate only in twenty-minute increments; and avoid crowds. AR 254-55. again, Najarian testified that no job was available for such an individual. AR 255.

**II.   Discussion**

    **A.   Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment

---

[5] Because Plaintiff had hepatitis B, the ALJ later eliminated from consideration all jobs involving food handling and preparation. AR 252.

[6] Because he claimed to be unable to read Dr. Parayno's writing, the ALJ was unable to present hypothetical four. AR 254.

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one:    Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two:    Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four:   Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five:   Does the claimant have the residual functional capacity to perform any other work? Is do, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since applying for disability benefits on February 24, 2006. AR 12. She had the following severe impairments: history of hepatitis, anorexia, headaches, myalgia, chronic fatigue, and adjustment disorder with depressed mood. AR12. These impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 13. Because Plaintiff had no past relevant work, step four did not apply. AR 17. Had Plaintiff possessed the ability to perform the full range of medium work, a finding of not disabled would have been appropriate. AR 17. The ALJ determined, however, that Plaintiff could "understand, carry out and remember simple one- and two-step job instructions, respond

7

appropriately to co-workers, supervisors and the public, respond appropriately to usual work situations and deal with changes in a routine work setting if the instructions are presented simply and unidimensionally." AR 13. Thus, he applied these additional limitations to his basic finding that Plaintiff was capable of unskilled work. AR 17. In light of Plaintiff's hepatitis, the ALJ added *sua sponte* a restriction against food handling in the interest of public health. AR 17. Because the vocational expert, Ms. Najarian was able to identify representative positions that could be performed by a person of Plaintiff's age, education, work experience, and residual functional activity, the ALJ concluded that Plaintiff was not disabled. AR 17-18. Representative positions included hand packer, machine cleaner, and meat/poultry hanger. AR 17.

**B.     Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

The scope of review requires this Court to consider the record as a whole, examining both the evidence supporting the ALJ's decision and the evidence that does not. After doing so, this Court concluded that substantial evidence supported the ALJ's findings.

///

**C.     Step Five Analysis**

Plaintiff contends only that the ALJ failed to carry the agency's burden to prove that Plaintiff can perform alternative occupations at step five of the sequential analysis. Plaintiff points out that, because her hepatitis B precludes her from a position handling food, those occupations (meat hanger, fruit cutter) must be removed from consideration. The vocational expert misidentified the remaining positions, hand packer and machine cleaner, as SVP 1 in the *Dictionary of Occupational Titles ("DOT")*, although each is correctly classified as SVP 2. Plaintiff maintains that because her limitations restricted her to SVP 1 positions, the agency failed to carry its burden of proving the existence of appropriate jobs. This Court disagrees.

Plaintiff maintains that, as a result of Najarian's misidentification of the applicable reasoning levels for the jobs of handpacker or machine cleaner II, the agency failed to establish that appropriate jobs were available to her. Plaintiff's limitation to simple job instructions must be reconciled with the reasoning levels of the jobs to which Najarian testified. Although the Social Security Regulations contain only two categories of abilities in regard to understanding and remembering instructions, either "short and simple" and "detailed" or "complex," the DOT has six gradations for measuring the ability to understand and remember instructions. *Meissl v. Barnhart*, 403 F.Supp.2d 981, 984 (C.D.Cal. 2005). For example, DOT level 2 requires application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and the ability to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id*. at 984 (*citation omitted*). Considering claimant Meissl's limitation to "simple tasks performed at a routine or repetitive pace," the Central District Court opined:

> To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Meissl*, 403 F.Supp.2d at 984.

Concluding that the claimant's RFC had to be compared to the DOT's reasoning scale, the Meissl court concluded that both DOT reasoning levels one and two encompassed an ability to

9

perform "simple and routine work tasks." *Id.* Courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two. *See, e.g., Seechan v. Astrue*, 2010 WL 1812637 (E.D.Cal. May 5, 2010)(No. 1:09-cv-00610-GSA); *Villafana v. Astrue*, 2010 WL 1286818 (E.D.Cal. March 29, 2010)(No. 1:08-cv-01954-GSA); *Racette v. Astrue*, 2010 WL 1286786 (E.D.Cal. March 29, 2010)(No. 1:08-cv-01645-GSA); *Stroda v. Astrue*, 2010 WL 129814 (W.D.Wash. January 11, 2010)(No. C09-5112BHS); *Erickson v. Astrue*, 2010 WL 129677 (C.D.Cal. January 5, 2010)(No. EDCV 09-484-OP); *Sorg v. Astrue*, 2009 WL 4885184 (W.D.Wash. December 16, 2009)(No. C09-5063KLS); *Vasquez v. Astrue*, 2009 WL 3672519 (C.D.Cal. October 30, 2009)(No. CV 08-5305-OP); *Moua v. Astrue*, 2009 WL 997104 (E.D.Cal. April 14, 2009)(No. 2:07-cv-02024-GGH); *Angulo v. Astrue*, 2009 WL 817506 (E.D.Cal. March 27, 2009)(No. 1:07-cv-01681-TAG); *Salazar v. Astrue*, 2008 WL 4370056 (C.D.Cal. September 23, 2008)(No. EDCV 07-00565-MAN ); *Isaac v. Astrue*, 2008 WL 2875879 (E.D.Cal. July 24, 2008)(CIV S-07-0442 GGH ); *Squier v. Astrue*, 2008 WL 2537129 (C.D.Cal. June 24, 2008)(No. EDCV 06-1324-RC); *Howard v. Astrue*, 2008 WL 3201221 (C.D.Cal. August 7, 2008) (EDCV 07-1291 RNB). *See also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Fletcher v. Astrue*, 2010 WL 1644877 (N.D.Tex. March 31, 2010)(No. CIVA509-CV-070-BG); *Burnette v. Astrue*, 2009 WL 863372 (E.D.N.C. March 24, 2009)(No. 2:08-CV-009-FL).

Here, the reasoning levels for machine cleaner II and handpacker both involve level two reasoning and are not in conflict with the ALJ's finding that Plaintiff was limited to positions requiring her to follow simple one- and two-step instructions. *Meissl*, 403 F.Supp.2d at 984. These two positions combined provide a total of 4108 positions in California and 36,972 nationally. These numbers constitute a significant number of available jobs. *Barker v. Secretary of Health and Human Services*, 882 F.2d 1474, 1478 (9th Cir. 1989) (finding that 1266 jobs in the area of Los Angeles and Orange County was significant). *See also Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986). Remand is unnecessary.

///

### III.   Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:   July 21, 2010**                                        /s/ Sandra M. Snyder
                                                                                    UNITED STATES MAGISTRATE JUDGE